**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Donna BALLARD, Defendant-Appellant.**

**No. 78–5127.**

United States Court of Appeals,
Fifth Circuit.

Dec. 22, 1978.

J. Roger Thompson, Frank J. Petrella, Atlanta, Ga., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Barbara D. Schwartz, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, GODBOLD and FAY, Circuit Judges.

FAY, Circuit Judge:

Appellant Donna Ballard was tried for the first time with Robert Barnes on charges of conspiracy to import and to pos-

sess cocaine with intent to distribute,[1] importation of cocaine,[2] and possession of cocaine with intent to distribute.[3] Appellant was convicted of the conspiracy count and acquitted of the others. She was given a new trial on the conspiracy charge and again convicted. She raises four points on appeal: 1) The government should not have been allowed to introduce a hearsay statement made by appellant's sister, Lisa, at the time of her arrest; 2) the court should have ruled that appellant's confession was involuntary and that testimony pertaining to it was inadmissible; 3) the court erred by overruling appellant's motion to dismiss the indictment or, in the alternative, by failing to limit the introduction of testimony which should have been barred by collateral estoppel; and 4) the government failed to prove appellant's guilt beyond a reasonable doubt. We affirm the conviction. The basic facts of the case are outlined in *Barnes v. United States*, 586 F.2d 1052 (5th Cir. 1978). We need not repeat them here. We consider the arguments seriatim.

## I. COCONSPIRATOR RULE

■ We refuse to accept appellant's first argument for reversal for the same reason that we rejected it in *Barnes*. Although admission of Lisa's statement was error, it was harmless in view of appellant's confession and the other overwhelming evidence of her guilt. *See United States v. Jennings*, 527 F.2d 862, 867 (5th Cir. 1976).

## II. VOLUNTARINESS OF CONFESSION

■ At trial, Donna Ballard denied making a confession. In the alternative, she argued that she involuntarily made the statement which she denied making. She asserts the latter as a ground for reversal, contending that the trial judge erred in finding at a *Jackson v. Denno*[4] hearing that her confession was voluntarily made. The question of the voluntariness of a confes-

sion turns on the effect of the totality of the circumstances on the defendant's will. *Boulden v. Holman*, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969); *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). The court must make this determination by at least a preponderance of the evidence. *Sims v. Georgia*, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967).

■ Appellant points to a number of factors which should have led the trial judge to the conclusion that her confession was involuntary. A number of appellant's contentions were factually resolved against her at trial. Donna testified that agent Putsche, the detaining officer, told her that he would see to it that she got fifteen years for each of three offenses and that, if she cooperated, her chances for probation were excellent. Putsche testified that he merely informed Donna of the maximum penalty and added that "realistically . . . you usually receive five to seven years." He further stated that he didn't mention probation. Donna testified that she was intimidated and that Putsche raised his voice, slapped the table, and called her a liar. Agents Putsche and Attaway stated that they did not frighten her, that no one yelled at her, and that much of the time, during which appellant was held, was spent "chatting." It is clear from these contradictory versions of the facts surrounding Donna's confession that the trial judge was required to make a choice based on credibility. The judge believed the agent's version of the situation, and there is ample evidence in the record to support his decision. The trial court's decision that the confession was voluntary was stated clearly in the record. *See Sims v. Georgia*, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593; *United States v. Gonzalez*, 548 F.2d 1185, 1189 (5th Cir. 1977). Accordingly, as an appellate court, we decline to upset these factual determinations. *See, e. g., United States v. Taylor*, 508 F.2d 761 (5th Cir. 1975).

---

**1.** 21 U.S.C. § 963.

**2.** 18 U.S.C. § 2 and 21 U.S.C. § 952(a).

**3.** 18 U.S.C. § 2 and 21 U.S.C. § 841(a).

**4.** 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

A number of appellant's grounds for reversal of the court's determination of voluntariness are not factually disputed. The question, then, is whether these circumstances mandate a finding as a matter of law, that the confession was not freely given. Agent Putsche told appellant that her sister had made a full confession. He further suggested that the narcotics traffickers do not take the risks; they use other people to carry the drugs. She was told that in return for her cooperation the government would make a recommendation and inform the court of her cooperation. She was informed of the maximum possible penalty and of the penalty realistically to be expected. Appellant was advised of her rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). She signed neither a waiver nor a written statement. At no time did she request an attorney.

■■■ A review of the circumstances surrounding the confession provides ample support for the trial court's ruling. Encouraging a suspect to tell the truth and suggesting that his cohorts might leave him "holding the bag" does not, as a matter of law, overcome a confessor's will, even though he or she may be sixteen years of age. *United States v. Barfield,* 507 F.2d 53 (5th Cir.), cert. denied, 421 U.S. 950, 95 S.Ct. 1684, 44 L.Ed.2d 105 (1975). Neither is a statement that the accused's cooperation will be made known to the court a sufficient inducement so as to render a subsequent incriminating statement involuntary. *Id.; United States v. Frazier,* 434 F.2d 994 (5th Cir. 1970). Finally, that appellant's statement was oral and not written does not, in itself, establish its inadmissibility. *United States v. Pollard,* 509 F.2d 601 (5th Cir. 1975). A truthful and noncoercive statement of the possible penalties which an accused faces may be given to the accused without overbearing one's free will. Such an account may increase the chance that one detained will make a statement. However, as long as the

statement results from an informed and intelligent appraisal of the risks involved rather than a coercive atmosphere, the statement may be considered to have been voluntarily made. Thus, in *Rivers v. United States,* 400 F.2d 935 (5th Cir. 1968), where a government agent informed a suspect of the statutory penalties for lying, without using the penalties to coerce the suspect into making a statement, we held that his will had not been overcome. Similarly, in the instant case, telling the appellant in a noncoercive manner of the realistically expected penalties and encouraging her to tell the truth is no more than affording her the chance to make an informed decision with respect to her cooperation with the government. *Cf. Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (guilty plea may be accepted even though defendant may have made it in order to avoid a harsher penalty after trial).

Determining whether a confession is voluntary requires an assessment of human motivation and behavior. One factor, by itself, is seldom determinative. Consequently, the impact of any one of the aforementioned acts will vary according to the circumstances under which they were performed and the state of mind of the accused. As we pointed out in *Rivers* and *Barfield* where we found the confessions to be voluntary, if the government's statements of which the appellant complains were made to appellant in a coercive manner, the court would have considered the confessions to have been made involuntarily. In this case, the judge found that appellant's statement was not made in a coercive atmosphere. The court resolved the credibility choice in favor of the government.[5] The facts, as found by the judge and as supported by the *Jackson* hearing, were that Donna Ballard knew she was caught, she was informed of her options, and she made a choice. Given these findings as a backdrop to the statements made to Miss Ballard, we refuse to hold as a

---

5. The judge also instructed the jury to disregard evidence of the conspiracy if it believed that the confession was not freely given.

matter of law that they had the effect of coercing her confession.

## III. DOUBLE JEOPARDY

As another ground for reversal, appellant proposes alternative double jeopardy arguments. At her first trial, she was charged with 1) conspiracy to import cocaine and to possess cocaine with intent to distribute; 2) importation of cocaine, and 3) possession of cocaine with intent to distribute. She was acquitted of the latter two offenses and convicted of the conspiracy charge. The trial judge thereafter ordered a new trial on the conspiracy count. At the second trial, appellant was again convicted of the conspiracy. She now maintains that the judge at the second trial should have granted her motion to dismiss the case on the basis of double jeopardy. In the alternative, she argues, the judge should have ruled that the prosecution was collaterally estopped from introducing proof of her importation and possession of cocaine since she had already been acquitted of those charges. We agree with neither contention.

■ The judge was not required by the double jeopardy clause to dismiss entirely the second trial of the conspiracy count. Conspiracy to commit a crime and the crime itself are clearly two separate offenses. *E. g., Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *King v. United States*, 565 F.2d 356 (5th Cir. 1978); *Curtis v. United States*, 546 F.2d 1188, *rehearing en banc* denied, 550 F.2d 41 (5th Cir.), *cert. denied*, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977). Acquittal on the substantive counts does not foreclose prosecution for the conspiracy.

Appellant also argues that the government is collaterally estopped from introduc-

ing evidence pertaining to her importation and possession of cocaine. Since she was acquitted of importation and possession of cocaine with intent to distribute, factual issues with respect to those events have been resolved against the government in the first trial. The question, then, is what the jury necessarily decided when it found appellant not guilty of the two substantive counts.

■ In order to make this determination, we must " 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter.' " *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (footnote omitted). Under *Ashe* as interpreted in the Fifth Circuit, if a "fact is not *necessarily* determined in the former trial, the possibility that it may have been does not prevent re-examination of that issue." *Adams v. United States*, 287 F.2d 701, 705 (5th Cir. 1961) (emphasis in original). *See also United States v. Gonzalez*, 548 F.2d 1185, 1191 (5th Cir. 1977).

■ The government's theory of the case at the first trial was that Robert Barnes engineered a plan whereby Donna and Lisa Ballard would personally carry cocaine into the country for later distribution. However, in Colombia the parties had a dispute, and McClure, the fourth party to the conspiracy, carried the drug instead. The jury was instructed on the separate counts of conspiracy, importation, and possession of cocaine with intent to distribute. At trial, no clear charge was given with respect to the vicarious liability of a passive conspirator for the criminal acts of a coconspirator. The jury was informed of the elements of the crime of conspiracy.[6] The trial judge

---

6. The judge charged that the government must prove four elements in order to establish a conspiracy:
   1. That the conspiracy described in the indictment was willfully formed and was existing at or about the time alleged;
   2. That the defendant willfully became a member of the conspiracy;
   3. That one of the conspirators thereafter knowingly committed at least one of the

overt acts charged in the indictment, at or about the time and place alleged; and
   4. That such overt act was knowingly done in furtherance of some purpose of the conspiracy charged.

This charge should be compared with the *Pinkerton* charge:
   [A]fter you gentlemen have considered all the evidence in this case, if you are satisfied from the evidence beyond a reasonable doubt that

also instructed the jury with regard to the elements of the counts of importation[7] and possession with intent to distribute.[8] In connection with the possession count, the jury was charged that possession may be sole or joint, and actual or constructive. These terms were defined for the jury.[9]

In order to accept appellant's argument, we must be able to say that the jury could not have acquitted her of the importation and possession counts without having made factual judgments which the government seeks to reverse by presenting contrary facts to establish appellant's part in the conspiracy.[10] The putative inconsistency between the prior acquittals on the substantive counts and the later conviction on the conspiracy count is solely one of legal and not factual logic: If appellant were a member of the conspiracy when the cocaine was possessed and imported, then she was vicar-

iously guilty of these substantive offenses. Conversely, it would follow that if she were not guilty of the substantive offenses, she could not have been a member of the conspiracy.[11]

We neither require nor expect from a jury such a degree of symmetry in its factual determinations. In order to acquit appellant of the substantive charges, it was not *necessary* for the jury to find that she was no longer a member of the conspiracy. While it is true that if the jury found appellant to be a member of the conspiracy, it also *could have* found her to be guilty of the substantive counts, there are a number of reasons why a rational jury would not necessarily do so. First, it may have been unclear to the jury that merely by being a member of the conspiracy at the time of the crimes was enough to convict her of the substantive charges as well.[12] Second, in

at the time these particular substantive offenses were committed, that is, the offenses charged in the first ten counts of this indictment if you are satisfied from the evidence beyond a reasonable doubt that the two defendants were in an unlawful conspiracy, as I have heretofore defined unlawful conspiracy to you, then you would have a right, if you found that to be true to your satisfaction beyond a reasonable doubt, to convict each of these defendants on all of these substantive counts, provided the acts referred to in the *substantive counts* were acts in furtherance of the unlawful conspiracy or object of the unlawful conspiracy, which you have found from the evidence existed.
*Pinkerton v. United States*, 328 U.S. 640, 645 n.6, 66 S.Ct. 1180, 1183, 90 L.Ed. 1489.

**7.** "1. The act of knowingly or intentionally importing 2. a controlled substance 3. into the United States from anyplace outside thereof."

**8.** "1. The act or acts of possessing a controlled substance with intent to distribute; 2. doing such acts knowingly of intentionally."

**9.** "A person who *knowingly* has direct physical control over a given thing at a given time is then in actual possession of it."

"A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing either directly or through another person or persons is then in constructive possession of it."

"The law recognizes also the possession may be sole or joint. If one person alone has actual or constructive possession of a thing posses-

sion is sole. If two or more persons share actual or constructive possession of a thing possession is joint."

"You may find that the element of possession as that term is used in these instructions is present if you find beyond a reasonable doubt that the defendant had actual or constructive possession either alone or jointly with others."

**10.** We note that the first jury did exactly that by convicting appellant of conspiracy but acquitting her of the substantive crimes.

**11.** This is also a questionable legal proposition. We have held that a jury may find a defendant guilty of conspiracy without finding her guilty of the substantive crimes which were the objects *of the conspiracy. Such findings are not legally inconsistent, since only an overt and not necessarily criminal act is necessary to prove the conspiracy charge. United States v. Fuiman*, 546 F.2d 1155 (5th Cir.), *cert. denied*, 434 U.S. 856, 98 S.Ct. 176, 54 L.Ed.2d 127 (1977).

**12.** In this respect, the instant case differs from *Turner v. Arkansas*, 407 U.S. 366, 92 S.Ct. 2096, 32 L.Ed.2d 798 (1972). In *Turner*, the defendant was tried first for murder. Another man was involved in the alleged murder and the jury was plainly charged that any person aiding and abetting or consenting to aid and abet any felony shall be deemed a principal offender. *Id.* at 369, 92 S.Ct. 2096. The defendant was acquitted and the state thereafter tried him for robbery arising out of the same facts. *The court held that since the jury was charged that defendant's presence would have required the jury to find him guilty of murder*

addition to the conspiracy theory of guilty, the judge charged the jury on the theory of constructive possession. Based on constructive possession, the jury may have found appellant to have committed the crime of possession, but its failure to do so may have been due to the jury's considered decision that appellant did not have the power to exercise dominion and control over the cocaine.[13] Such a finding would be consistent with testimony which showed that Barnes organized and operated the conspiracy and the girls were his pawns or helpers. Barnes' conviction on the substantive counts bears out this possibility, since he was convicted even though he also did not have actual possession of the drugs. The jury reasonably could have reasoned that, since Barnes was the ring leader, he should be considered to be in possession and therefore guilty of the offense, but that since appellant's participation was less substantial, she was not guilty of possession. Likewise, the jury may have reasoned that, as the leader of the group, Barnes was responsible for the importation of the cocaine even though he did not physically carry it.

We need not speculate any further. A reasonable and normal jury could have found appellant not guilty of the substantive offenses without deciding against the government the facts which were presented in the second trial to establish her guilt. Accordingly, the government was not collaterally estopped from presenting those facts which bore on the conspiracy, and it was not limited to acts occurring before the parties boarded the plane for the United States.

## IV. PROOF BEYOND A REASONABLE DOUBT

Finally, appellant maintains that the government failed to prove its case beyond a reasonable doubt. In view of our decision that appellant's confession was voluntary

and since the jury found him not guilty, it necessarily determined that he was not present at the scene of the two crimes. Hence, the state was estopped from later showing that he was present for the purpose of robbery. In this case, the lack of clarity in the instructions with

and admissible, this claim falls with no further discussion. *See Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

AFFIRMED.

respect to vicarious or passive responsibility prevents us from believing that the jury's logic was necessarily this precise.

**13.** See note 9, *supra.*